1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Nationstar Mortgage, LLC,

      Plaintiff

v.

Thunder Properties, Inc.,

      Defendants

Case No. 2:17-cv-00713-JAD-NJK

**Order Granting in Part Motion for Summary Judgment and Directing Further Briefing**

[ECF No. 39]

10       This is one of the hundreds of lawsuits in this district in which the holder of a deed of

11  trust seeks a declaration that a homeowner's association's non-judicial foreclosure sale did not

12  extinguish its security interest.  Here, Nationstar Mortgage, LLC sues foreclosure-sale purchaser

13  Thunder Properties, Inc., seeking a declaration that Thunder purchased a property subject to a

14  deed of trust held by Nationstar's affiliate, Champion Mortgage Company.[1]  Nationstar, which

15  services the mortgage for its affiliate Champion, moves for summary judgment, arguing

16  primarily that the HOA's failure to provide Champion the statutorily required notices renders the

17  foreclosure sale void.[2]  I find that Nationstar has established that Champion did not receive

18  notice, but because it has offered no evidence that Champion suffered prejudice as a result, I

19  cannot void the sale on summary judgment.  However, that lack of notice plus the undisputed

20  evidence of the gross inadequacy of the foreclosure-sale price makes this a classic claim for

21

22

23

---

[1] ECF No. 36 (amended complaint).

[2] ECF No. 39.  I find this motion suitable for disposition without oral argument.  L.R. 78-1.

1 | equitable relief under *Shadow Canyon*, so the sale is voidable.  I thus grant the motion in part and

2 | direct further briefing on the proper remedy in light of this holding.

3 | **Background**

4 | Robert Flowers took out a nearly $500,000 home-equity line of credit on the home he

5 | owned at 3433 Skyline Boulevard in Reno, Nevada,[3] in 2006, secured by a deed of trust.[4]  The

6 | home is located within the Skyline Villas planned-unit development community and subject to

7 | the governing documents for its homeowners' association.[5]  The Nevada Legislature gave

8 | homeowners' associations a superpriority lien against residential property for certain delinquent

9 | assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial

10 | foreclosure procedure for them to enforce that lien.[6]  When the assessments became delinquent

11 | on the Flowers property, the Skyline Villas Association (HOA)—through its agent Hampton &

12 | Hampton Collections, LLC—commenced foreclosure proceedings by sending a notice of

13 | delinquent assessment dated February 28, 2013.[7]  The HOA ultimately sold the property at

14 | foreclosure to Thunder Properties, Inc. for just $9,359.01 that November.[8]

15 | As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014,

16 | because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that

17 | lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will

18 |

19 |

20 | [3] ECF No. 39-1 (original 2004 grant deed).
[4] ECF No. 39-2 at 2 (home equity conversion deed of trust).

21 | [5] *Id*. at 12.

22 | [6] Nev. Rev. Stat. § 116.3116; *SFR Inv. Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).

23 | [7] ECF No. 48-2.
[8] ECF No. 39-13.

1  extinguish a first deed of trust."[9]   Nationstar, which does business as Champion Mortgage

2  Company, claims that Champion is the beneficiary of the deed of trust on the Flowers property

3  today, just as it was when the HOA sent the foreclosure notices to twice-since-superseded

4  beneficiary Seattle Mortgage Company.  Nationstar brings this quiet-title action against

5  foreclosure-sale purchaser Thunder Properties to save that deed of trust from extinguishment.  It

6  primarily claims that the HOA never gave lienholder Champion the statutorily required notices

7  and that failure of notice renders the sale void, so Thunder Properties purchased the home subject

8  to the deed of trust.[10]   That quiet-title claim is the type recognized by the Nevada Supreme Court

9  in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action

10  "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title

11  disputes."[11]   The resolution of such a claim is part of "[t]he long-standing and broad inherent

12  power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the

13  circumstances support" it.[12]

14       Discovery has closed,[13] and Nationstar moves for summary judgment in its favor.[14]

15  Nationstar argues that the sale is void due to the HOA's failure to send Champion the notices

16  required by statute or, alternatively, that the sale must be set aside as void based on equity.

17  Thunder responds that, when the HOA sent the foreclosure notices to Seattle Mortgage,

18

19

[9] *SFR I*, 334 P.3d at 419.

20

[10] ECF No. 36 (amended complaint).

21  [11] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–11 (Nev. 2016).

22  [12] *Id*. at 1112.

23  [13] ECF No. 27 (scheduling order with a discovery cutoff of 11/13/2019).

[14] ECF No. 39.

1  Champion likely received them.  Regardless, it contends, the sale is presumed valid based on

2  conclusive recitals in the foreclosure deed.[15]  I consider each argument in turn.

3

4  **Discussion**

**A.    There is no genuine issue that Champion held the deed of trust at the time the
5          notices were mailed.**

6           Nationstar has established through recorded documents and the affidavits of its employee

7  Stephen Craycroft[16] that Nationstar, doing business as Champion Mortgage,[17] is the record

8  beneficiary of the deed of trust, and it held that distinction when the foreclosure-related notices

9  were dispatched in 2013.  Seattle Mortgage Company was the first beneficiary of the deed of

10  trust.[18]  Seattle assigned the security instrument to Bank of America, N.A. in 2007,[19] who then

11  assigned it to Champion in 2012.[20]  Nationstar, dba Champion, has been the servicer of that

12  mortgage since November 2012.[21]  There is no genuine dispute that the HOA did not mail the

13  statutorily required foreclosure notices to Champion—the HOA mailed them to Seattle Mortgage

14  instead.[22]

15

16

17

---

18  [15] ECF No. 48.

19  [16] ECF Nos. 39-8, 56-1.

[17] ECF No. 39-7 (dba registration).
20
   [18] ECF No. 39-2.

21  [19] ECF No. 39-3.

22  [20] ECF No. 39-6.

   [21] ECF No. 39-8, ¶ 6(c).
23
   [22] *See* ECF Nos. 56-1 (Craycroft affidavit); 39-10 at 10–11 (Hampton 36(b)(6) witness, testifying
   at deposition that there was no mailing to Champion); 48-8 at 2, 7 (certificates of mailing).

So Thunder attempts to show that Champion received notice some other way.[23]  Thunder argues that the record of just who was entitled to such notice is clouded by a later assignment—dated August 29, 2013—by which Champion "as attorney in fact for Bank of America," assigned the deed of trust back to Seattle.[24]  Thunder contends that Champion and Nationstar therefore must have been acting as an agent of Bank of America, which had the same mailing address as Seattle Mortgage.  So, when the foreclosure notices were mailed to Seattle Mortgage, Champion was either on notice, or there is an issue of fact whether the HOA's mailing of the notices to Seattle Mortgage put Champion on notice.[25]

But an analysis of the evidence in this case[26] disproves Thunder's theory because Champion was not Bank of America's agent for notice purposes.  Thus, even if I could make the illogical leap that mail to Seattle Mortgage would have gotten to Bank of America, Bank of America's knowledge of that notice can't be imputed to Champion.  The questioned assignment document states in bold that it was being "recorded to connect the break in the chain of

---

[23] Thunder's primary argument is that recitals on the foreclosure deed that the HOA complied with all statutory notice requirements are conclusive proof of that fact.  *See* ECF No. 48 at 7–9. This assertion greatly overstates the law in this regard.  As Thunder itself admits, *see id.* at 9, those deed recitals are binding only "in the absence of grounds for equitable relief."  *Shadow Wood*, 366 P.3d at 1112 (quoting *Holland v. Pendleton Mortg. Co.*, 143 P.2d 493, 496 (Cal. 1943)) (emphasis omitted).  They do "not eliminate the equitable authority of the courts to consider quiet title actions . . . ."  *Id.*  So, at best, these presumptions shifted the burden of proof to Nationstar to show that Champion did not receive the notices; Nationstar has met that burden.

[24] ECF No. 39-5.

[25] ECF No. 48 at 12–13.

[26] Thunder muses in its opposition that it might move to reopen discovery to explore these relationships, *see* ECF No. 48 at 13, but it never did, and these rumblings never grew into a proper FRCP 56(d) request.

title . . . ."[27]  So the chain for this interest now looks like this:

| ECF No. | Assigned from | Assigned to | Date |
|---------|---------------|-------------|------|
| 39-3 | Seattle Mortgage | Bank of America | 7/3/07 |
| *39-5\** | *Bank of America (by Champion as attorney in fact)* | *Seattle Mortgage* | *8/29/13* |
| 39-4 | Seattle Mortgage | Bank of America | 3/7/12 |
| 39-6 | Bank of America | Champion | 11/21/12 |

Champion was authorized to execute that corrective assignment**\*** by a limited power of attorney granted by Bank of America to allow Champion to "[c]orrect or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided by or prepared by [Bank of America] . . . ."[28]  That power of attorney did not authorize Champion to serve as Bank of America's agent for notice purposes.[29]  So there is no evidence in this record that the HOA's mailing of notice to the original, twice-succeeded beneficiary of this deed of trust would have put Champion—the record beneficiary at the time of the November 12, 2013, foreclosure sale and the notices leading up to it—on notice that its security interest was at stake. I therefore find that Nationstar has established without genuine dispute that the HOA did not provide Champion with the statutorily required notices and that Champion did not receive notice by an alternative means.

---

[27] *Id*. at 2 (emphasis omitted).

[28] ECF No. 56-1 at ¶ 6(e); *id*. at 6 (limited power of attorney).

[29] *See id*. at 6–7.

**B.      The fact that Champion was on notice of the sale does not, itself, render the sale void.**

Because NRS Chapters 107 and 116 required Champion to receive the notices of default and sale,[30] the HOA's failure to provide that notice can render the foreclosure sale void.  But, as the Nevada Supreme Court explained in *U.S. Bank v. Resources Group, LLC*, a void sale requires two findings: lack of notice *and prejudice*.[31]  And here, Champion has not argued, let alone established with evidence, that it suffered the prejudice needed to void the sale.  So I cannot conclude on summary judgment that the sale is void.

**C.      The lack of notice, combined with the undisputedly inadequate sale price, renders the sale voidable.**

Lack of notice can also render a foreclosure sale voidable if the lienholder can show both that the property sold for an inadequate price and that "fraud, unfairness, or oppression affected the sale . . . ."[32]  The Nevada Supreme Court has recognized that the unfairness element of such a claim, known colloquially as a "*Shadow Canyon*" equitable-relief claim, can be established by lack of notice.  In *Resources Group*, the bank that held the deed of trust sued the foreclosure-sale purchaser, arguing—as Nationstar does here—that the HOA's failure to send it the statutorily

---

[30] *See SFR Inv. Pool 1, LLC v. Bank of New York Mellon* ("*Star Hill*"), 422 P.3d 1248, 1252 (Nev. 2018) (concluding that the foreclosure statutes required "the homeowners' association [to] provide notice to the holder of the first security interest as a subordinate interest"); *U.S. Bank v. Res. Grp., LLC*, 444 P.3d 442, 446 (Nev. 2019) (holding that the HOA's foreclosure agent was required to provide notice to the deed of trust beneficiary at record address).  Thunder's suggestion that the notices were "duly and properly served" because they went to the original lender identified in the deed of trust, *see* ECF No. 48 at 9–10, ignores the law.

[31] *Res. Grp.*, 444 P.3d at 447.

[32] *Nationstar Mortg. v. Saticoy Bay LLC Series 2227 Shadow Canyon* ("*Shadow Canyon*"), 405 P.3d 641, 643 (Nev. 2017).

1  required notices rendered the sale void.[33]  But because the district court had not made the

2  necessary findings on notice or prejudice, the Court turned to the bank's "fallback position," that

3  the sale was voidable under *Shadow Canyon*,[34] in which the Nevada Supreme Court recognized

4  that "irregularities that may rise to the level of fraud, unfairness, or oppression" rendering a sale

5  voidable "include an HOA's failure to mail a deed of trust beneficiary the statutorily required

6  notices."[35]  Although the trial court in *Resources Group* had not determined the property's fair

7  market value, the Court found that "the record evidence suggest[ed] that the $5,331 bid price fell

8  somewhere between 10% and 15% of its fair market value."[36]  The panel then concluded that

9  "[t]he grossly inadequate price, combined with the problems with the notice of default . . .

10 present[ed] a classic claim for equitable relief under *Shadow Canyon*" and its predecessor

11 cases.[37]  Questions of fact about the purchaser's bona fide purchaser (BFP) status, however, left

12 the Court unable to fully resolve that *Shadow Canyon* claim.[38]

13      No similar obstacle exists here.  As I found above, the record establishes that Champion

14 did not receive notice of this sale either from the HOA as the law required, or by other means.

15 This irregularity satisfies *Shadow Canyon*'s unfairness requirement.[39]  Nationstar presented the

16 declaration of its valuation expert, Matthew Lubawy, that the property was worth $245,000 when

17 it sold at foreclosure for just $9,359.01[40]—just under 4% of the fair market value.  Thunder

18

---

[33] *Res. Grp.*, 444 P.3d at 447–48.

19 [34] *Id.* at 448.

[35] *Shadow Canyon*, 405 P.3d at 648 n.11 (emphasis omitted).

20

[36] *Id*. at 449.

21 [37] *Id*.

[38] *Id*.

22

23 [39] *Res. Grp.*, 444 P.3d at 448.

[40] ECF No. 39-14.

1 offers no contrary valuation evidence, so the record shows without dispute that Thunder picked

2 up this property for an even more grossly inadequate price than the Court considered in

3 *Resources Group*.

4      Although BFP status must be considered when balancing the equities in an action to quiet

5 title following an HOA foreclosure sale,[41] Thunder presents no evidence that it enjoys such

6 status. "A BFP is one who 'takes the property for a valuable consideration and without notice of

7 the prior equity, and without notice of facts which upon diligent inquiry would be indicated and

8 from which notice would be imputed to him, if he failed to make such inquiry.'"[42] Thunder had,

9 at the very least, record notice of Champion's interest,[43] and Thunder makes no effort to show

10 that it qualifies as a BFP. In its balancing-the-equities argument, Thunder offers only the

11 conclusory statement that it "was a wholly innocent party while the Bank possessed the

12 knowledge and means to prevent the HOA Foreclosure Sale from taking place"[44]—which is

13 empirically untrue because Champion was not given notice. Thunder's other arguments that

14 equity disfavors Champion are all based on the unsupportable notion that Champion was Bank of

15 America's agent, and because the notices were sent to Seattle Mortgage at Bank of America's

16 address, Champion must have known about the sale. Because Champion did not have notice,

17 and it was the record lienholder of a nearly $500,000 mortgage and secured interest on a property

18 that Thunder Properties bought for just $9,359.01, I find that the balance of equities tips in favor

19

20

---

21 [41] *Res. Grp.*, 444 P.3d at 449.

22 [42] *Id.* (quoting *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1115 (Nev. 2016)).

23 [43] *See* ECF No. 39-6.

[44] ECF No. 48 at 16.

1  of Champion.  Nationstar is therefore entitled to summary judgment on its *Shadow Canyon*

2  equitable claim.

3      Unfortunately, however, that is where my rulings must end for now.  Nationstar argued

4  that its success on a *Shadow Canyon* theory would render the sale *void*,[45] so it did not address

5  what the court's next steps should be if it found—as I do here—that the sale is *voidable*.

6  Nationstar concludes its reply brief with the single sentence that "the deed of trust should be

7  found to remain a lien on the property," without identifying just how a voidability determination

8  compels that result.[46]  Accordingly, I grant summary judgment in part here; find that Nationstar

9  has established its right to relief on a classic *Shadow Canyon* price-plus-unfairness showing,

10  rendering the sale voidable; and direct the parties to brief the appropriate scope of relief for that

11  successful *Shadow Canyon* claim.[47]

**Conclusion**

13      IT IS THEREFORE ORDERED that Nationstar's Motion for Summary Judgment

14  **[ECF No. 39] is GRANTED in part.**  It is granted as to the *Shadow Canyon* theory, so the

15  November 12, 2013, foreclosure sale to Thunder Properties, Inc. is **voidable**.

16      IT IS FURTHER ORDERED that **Nationstar has until October 16, 2020, to file a**

17  **supplemental motion for summary judgment addressing only the appropriate remedy**

---

[45] *See* ECF No. 56 at 6.

[46] *Id*. at 9.

[47] Because I find that Nationstar is entitled to summary judgment on the *Shadow Canyon* theory, I need not and do not reach its remaining theories, except to note that Nationstar's due-process-violation theory based on *Bourne Valley Court Tr. v. Wells Fargo Bank*, 832 F.3d 1154 (9th Cir. 2016) has been invalidated by the Nevada Supreme Court and the Ninth Circuit.  *See, e.g.*, *Bank of Am., N.A. v. Arlington W. Twilight Homeowners Ass'n*, 920 F.3d 620, 624 (9th Cir. 2019) ("In light of [the Nevada Supreme Court's *Star Hill* decision], *Bourne Valley* no longer controls the analysis, and we conclude that Nev. Rev. Stat. § 116.3116 et seq. is not facially unconstitutional on the basis of an impermissible opt-in notice scheme.").

1 | **based on this voidability finding**, with a fulsome memorandum of points and authorities

2 | supporting that remedy.  The briefing deadlines under Local Rule 7-2 will apply to further

3 | briefing on this issue.  Because the dispositive-motion deadline has expired, no other dispositive

4 | motions will be permitted.

5 |

              _____
U.S. District Judge Jennifer A. Dorsey
September 29, 2020

6 |

7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |